IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:11-cv-14157-KMM

HIGHLANDS INDEPENDENT BANK,

    Plaintiff,

vs.

HECTOR C. PAGES-MORALES a/k/a
HECTOR C. PAGES,

    Defendant.

                                                       /

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    THIS CAUSE came before the Court upon Plaintiff Highlands Independent Bank's Motion for Summary Judgment (ECF No. 40). Defendant filed a Response and Cross-Motion for Summary Judgment (ECF No. 43). Plaintiff and Defendant each filed a Reply (ECF Nos. 44 & 45). The Motions are now ripe for review. UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND[1]

    This matter arises from a lending relationship between Plaintiff, Highlands Independent Bank, and Defendant, Hector C. Pages-Morales, a/k/a Hector C. Pages. On July 8, 2008, Plaintiff and Defendant entered into an agreement whereby Plaintiff would provide Caribbean Real Estate Developers, Inc. a loan in the amount of $200,000, with an initial variable interest rate of 6.00% and a maturity date of July 8, 2009 (the "First Obligation"). See Am. Compl., Ex. A (ECF No. 31-1). Defendant was a Managing Member of Caribbean Real Estate Developers,

---

[1] The facts herein are taken from Plaintiff's Amended Complaint (ECF No. 31).

1

Inc. (collectively, the "Obligors"), and guaranteed the loan (the "Guaranty"). See Am. Compl., Ex. B (ECF No. 31-2). The Guaranty was secured by a mortgage. See Am. Compl., Ex. C (ECF No. 31-3).[2] Plaintiff and Obligors subsequently amended the First Obligation by extending the maturity date to October 8, 2009. See Am. Compl., Ex. D (ECF No. 31-4). On October 8, 2009—the day the First Obligation was to be repaid—Plaintiff and Obligors again amended the First Obligation, this time extending the maturity date to January 8, 2010. See Am. Compl., Ex. E (ECF No. 31-5). On January 8, 2010, Plaintiff and Obligors executed a new promissory note in the principal amount of $ 200,000, with an initial variable interest rate of 5.00%, and a maturity date of May 8, 2010. See Am. Compl., Ex. F (ECF No. 31-6). This had the effect of "modifying and/or renewing the First [Obligation]." Am. Compl., at ¶ 9 (ECF No. 31). The First Obligation was further modified and/or renewed by a subsequent promissory note between Plaintiff and Obligors, dated May 8, 2010, in the principal amount of $200,000, with an initial variable interest rate of 5.00%, and a maturity date of June 8, 2011. See Am. Compl., Ex. H (ECF No. 31-8).

On June 9, 2009—approximately one year after Plaintiff and Obligors executed the First Obligation—Plaintiff and Obligors entered into a second and separate agreement whereby Plaintiff would provide to Obligors a loan in the amount of $175,000, with an initial variable interest rate of 5.00% and a maturity date of June 9, 2010 (the "Second Obligation"). See Am. Compl., Ex. I (ECF No. 31-9). Like the First Obligation, Defendant guaranteed the Second Obligation. See Am. Compl., Ex. J (ECF No. 31-10). The second loan Guaranty was also secured by a mortgage. See Am. Compl., Ex. K (ECF No. 31-11). On June 9, 2010, Plaintiff and Obligors executed a new promissory note in the principal amount of $175,000, with an

---

[2] The Guaranty, however, explicitly states that Plaintiff's interest is not limited solely to the collateral securing the Indebtedness. Am. Compl., Ex. B, at 1.

initial variable interest rate of 5.00%, and a maturity date of June 9, 2011.  See Am. Compl., Ex. O (ECF No. 31-15).[3]  This had the effect of modifying and/or renewing the Second Obligation." Am. Compl., at ¶ 10.

According to Plaintiff, Obligors are currently in default on the First and Second Obligations  (collectively, the "Obligations") "due to non-payment of the periodic payments of the Obligations since February 8, 2011, and non-payment of the 2010 real estate taxes owed on the Mortgaged Property, which are currently delinquent." Am. Compl., at ¶ 13.  Additionally, on April 4, 2010, a foreclosure action was initiated against Obligors in Florida state court by a third party.  Id., at ¶ 14.  Pursuant to the terms of the Obligations, the foreclosure action constitutes a separate event of default, and provides Plaintiff "the discretion to seek in personam relief against the Guarantor . . . notwithstanding the pendency of the Foreclosure Action, and regardless of its collateral position." Id., at ¶ 15.  On May 4, 2011, Plaintiff initiated the instant action and now motions this Court to award summary judgment in its favor.

**II. STANDARD OF REVIEW**

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994).  The moving party has the burden of meeting this exacting standard.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Moreover, "A party must support its assertion that there is no genuine issue of material fact by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" Ritchey v. S. Nuclear Operating Co., No. 10-11962, 2011 WL 1490358, at *1 (11th Cir. Apr. 20, 2011) (quoting Fed. R. Civ. P. 56(c)(1)).  An issue

---

[3] Exhibits A–O of Plaintiff's Amended Complaint are collectively referred to as the "Loan Documents."

of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. ANALYSIS

Plaintiff requests judgment for damages against Defendant in the full amount of the First Obligation (Claim I) and the Second Obligation (Count II), plus interest, court costs, and reasonable attorneys' fees recoverable pursuant to the Loan Documents. Defendant asserts six affirmative defenses: (1) accord and satisfaction; (2) failure to comply with a condition precedent; (3) lack of consideration; (4) failure to mitigate damages; (5) waiver by modification; and (6) res judicata. Defendant also argues that Defendant revoked the Guaranties that he signed. This Court now addresses each of Defendant's defenses.

A. Defendant's "Guarantor Defenses"

Defendants First, Second, and Third Affirmative Defenses are based on Defendant's claim that Plaintiff did not obtain new Guaranties when it renewed the Obligations in 2009 and 2010. For this reason, Defendant argues, he is not liable for the Obligations. A review of the First and Second Guaranties reveals, however, that the Guaranties are absolute and continuing. Each Guaranty explicitly states, "This is a 'continuing guaranty' under which Guarantor agrees to Guarantee the full and punctual payment, performance, and satisfaction of the Indebtedness of

Borrower to Lender, now existing or hereafter arising or acquired, on an open and continuing basis." Am. Compl., Ex. B, at 1; Ex. J, at 1. Additionally, each Guaranty defines "Indebtedness" as:

> [A]ll of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses . . . now existing or hereafter arising or acquired . . . [and includes without limitation] loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations . . . .

Am. Compl., Ex. B, at 1; Ex. J, at 1. Each Promissory Note within the series of Loan Documents comprising the Obligations explicitly references the existing agreement it modifies and each Note rests upon Defendant's Guaranties. Defendant argues that the final Promissory Notes dated May 8, 2010 and June 9, 2010 were new notes that were independently negotiated after Defendant explicitly revoked the original Guarantees. Defendant goes so far as to say that "Plaintiff acknowledged a revocation of the guarantees as part of the negotiation to induce Defendant to convey additional mortgage security." Def.'s Reply, at 5. Defendant, however, provides no evidence to support this conclusory allegation. The Guaranties explicitly state that "[i]f Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing . . . mailed to Lender, by certified mail." Am. Compl., Ex. B, at 1; Ex. J, at 1. In light of the Guaranties' revocation requirements, Defendant's argument that he is "elderly with health and cognition problems and does not recall the exact method of revocation," Def.'s Reply, at 2, is unavailing and insufficient to overcome Plaintiff's Motion for Summary Judgment.[4]

---

[4] Defendant claims that "Plaintiff has not established that Defendant's son, Hector O. Pages, who was the only individual that signed the new Notes on behalf of Caribbean, had the authority to bind [the Obligors]." Def.'s Reply, at 4. Tellingly, Defendant does not actually argue that Hector O. Pages did not have the authority to bind the Obligors nor does Defendant dispute the validity of the Promissory Notes signed by Hector O. Pages. For these reasons, this Court does not evaluate Defendant's assertion as to the validity of the May 8, 2010 and June 9, 2010 Promissory Notes because it is not genuinely disputed by either party.

The instant case is indistinguishable from Chris Craft Industries, Inc. v. Van Valkenberg, 267 So. 2d 642 (Fla. 1972). In Chris Craft, the guarantor-defendant signed a guaranty in which the defendant guaranteed "the full and prompt payment of the . . . promissory note and of all extensions and renewals thereof which extensions and renewals may be made without notice to or consent." Id. at 643. The underlying debt was subsequently modified before it was defaulted upon. Id. at 643–44. Finding the guarantor-defendant liable for the original obligation and the subsequent modification to the original obligation, the Florida Supreme Court held that because the defendant agreed in the original guaranty to all "extensions and renewals," the defendant could not assert that he had been discharged by an extension or renewal agreed to by him. Id. at 646; see also Fidelity Nat'l Bank of S. Miami v. Melo, 366 So. 2d 1218 (Fla. 3d Dist. Ct. App. 1979); Fewox v. Tallahassee Bank & Trust Co., 249 So. 2d 55 (Fla. 1st Dist. Ct. App. 1971). Here, like in Chris Craft, Defendant waived his right to notice of any future extension or modification of the original Obligations. See Am. Compl., Ex. B, at 2 ("Guarantor waives any right to require Lender . . . (B) to make any presentment, protest, demand, or notice of any kind . . . in connection with the Indebtedness . . . ."); Ex. J, at 2 (same). Consequently, Defendant's Guaranties are binding on Defendant and his First, Second, and Third Affirmative Defenses are insufficient as a matter of law.

Defendant argues that regardless of the Guaranties he signed, the modifications to the Obligations preclude their enforcement. Specifically, Defendant claims that in light of the "catastrophic meltdown of the real estate market," he cannot be held responsible for the modified Notes when "he was not given an opportunity to step in and minimize the loss as a subrogor, and the guarantees were not called until the loss on the modified, unguaranteed, notes was complete and unsalvageable." Def.'s Am. Answer, at 6 (ECF No. 38). This Court finds Defendant's argument meritless for several reasons. First, contrary to Defendant's assertion, the modified

Notes were guaranteed by Defendant. Second, in Chris Craft the Florida Supreme Court specifically upheld a waiver of notice provision similar to the provision agreed to by Defendant, which absolved Plaintiff of any affirmative obligation to notify Defendant of modifications to the First and Second Obligations. Chris Craft, 267 So. 2d at 646. Third, Defendant's claim that he was denied the "opportunity" to "step in and minimize the loss" is a conclusory allegation devoid of factual support. Finally, the "catastrophic meltdown of the real estate market" is irrelevant to Defendant's liability under the Guaranties he signed. The Guaranties do not contain any provision absolving Defendant of liability due to unforeseen economic decline. Moreover, Defendant specifically waived any right to claim discharge of the Indebtedness "on the basis of unjustified impairment of any collateral for the Indebtedness." Am. Compl., Ex. B, at 2; Ex. J, at 2. Defendant's mistaken belief that the real estate market would not decline during the duration of the Obligations does not excuse Defendant's liability. For these reasons, Defendant's Fifth Affirmative Defense fails.

B. Defendant's Failure to Mitigate Defense

Defendant's Fourth Affirmative Defense argues that Plaintiff failed to take reasonable steps to mitigate damages because "Plaintiff did not contact Defendant as obligor of the notes and provide Defendant an opportunity to step in as guarantor, satisfy the notes and subrogate to the rights of plaintiff and take all steps necessary to minimize the loss based on market conditions." Def.'s Am. Answer, at 5. This Court has already found that Defendant waived his right to notice of any future extension or modification to the original Obligations. Defendant provides no authority for his argument that Plaintiff had an affirmative duty to demand payment on the Obligations in light of the declining real estate market. The extensions and modifications to the Obligations did not increase the principal amount and merely extended the maturity date. Moreover, at the time Plaintiff allowed such renewals and modifications to the Obligations,

Plaintiff "knew of no defaults with respect to the Obligations and had received satisfactory financial information from the Obligors to support the renewal requests." Pl.'s Mot. for Summ. J., at 14. Consequently, there is nothing in the record to support Defendant's assertion that Plaintiff's actions increased the damages or that Plaintiff could have mitigated the damages. See Graybar Elec. Co., Inc. v. Stratton of Fla., Inc., 509 So. 2d 1133 (Fla. 2nd Dist. Ct. App. 1987) (holding the doctrine of avoidable consequences inapplicable because the creditor had no reason to know of debtor's financial distress). For these reasons, Defendant's Fourth Affirmative Defense fails.

### C. Defendant's Res Judicata Defense

Defendant argues that Plaintiff's claim may be barred by the doctrine of res judicata due to a state court proceeding involving Plaintiff and Defendant. "The purpose behind the doctrine of res judicata is that the 'full and fair opportunity to litigate protects adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999) (quoting Montana v. United States, 440 U.S. 147 (1979)). A "claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Id. Here, the state court action referenced by Defendant was a foreclosure action brought by a third party to enforce its rights against Defendant and several other parties, including Plaintiff. Plaintiff and Defendant were both defendants in the action and Plaintiff did not file a cross-claim against Defendant. As cross-claims are never compulsory, the doctrine of res judicata does not bar the instant action and Defendant's Sixth Affirmative Defense is insufficient as a matter of law. Defendant has failed to

8

present any valid affirmative defenses to Plaintiff's claims.  In light of the extensive documentary record in support of Plaintiff's claims, this Court awards summary judgment in favor of Plaintiff on the issue of liability because there is no genuine issue of material fact with respect to Plaintiff's claims.

**IV. CONCLUSION**

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Plaintiff Highlands Independent Bank's Motion for Summary Judgment (ECF No. 40) is GRANTED.  It is further

ORDERED AND ADJUDGED that Defendant Hector C. Pages-Morales' Motion for Summary Judgment (ECF No. 43) is DENIED.   It is further

ORDERED AND ADJUDGED that trial for this matter is CONTINUED to the two-week trial period of September 10, 2012 at 9:00 a.m. in Courtroom 1, 300 South Sixth Street, Ft. Pierce, Florida.  All parties are directed to report to the calendar call and final pretrial conference on August 30, 2012 at 2:00 p.m., in Courtroom 13-1, (thirteenth floor) United States Courthouse, 400 North Miami Avenue, Miami, Florida at which time all matters relating to the scheduled trial date may be brought to the attention of the Court.  It is further

ORDERED AND ADJUDGED that pursuant to Local Rule 7.1(c), Plaintiff has leave to file a Motion for Partial Summary Judgment on the issue of damages on or before June 1, 2012.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th day of May, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record